IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SYLVESTER O. BARBEE                                                                    PLAINTIFF

v.                              Civil No. 6:14-cv-06082-SOH-MEF

DR. LISBETH ANN MURPHY, MARIE                                              DEFENDANTS
LANE, WENDY KELLEY

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Sylvester O. Barbee, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the Arkansas Department of Corrections ("ADC"), East Arkansas Regional Unit. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before me is a Motion for Summary Judgment by Defendants, Dr. Lisbeth Anne Murphy and Marie Lane ("Medical Defendants"). (Doc. 68) Also before me is a Motion for Summary Judgment by Defendant, Wendy Kelley. (Doc. 71) After careful consideration, the undersigned makes the following Report and Recommendation.

### I. BACKGROUND

Plaintiff filed his Complaint on June 27, 2014, in the Eastern District of Arkansas. (Doc. 2) The case was transferred to this District on June 30, 2014. (Doc. 3) In his Complaint, Plaintiff brings suit against all Defendants in both their official and personal capacities. (Doc. 2) A page was missing from the transferred Complaint, so a Complete Complaint was filed on October 22, 2014. (Doc. 9) All references to the Complaint will refer to this second Complaint.

1

Plaintiff alleges Defendants were deliberately indifferent to his medical needs when they denied him medical limitations from work duty for his allergies, asthma, and right hand issues while he was at the ADC Ouachita River Unit ("ORU"). He alleges his field work duties placed in him in contact with allergens such as dust, pollens, weeds, and grass, and therefore exacerbated his asthma. (Doc. 9, pp. 4-5, 8, 10) He also alleges pain and dysfunction in his right hand, which requires that he receive a work restriction limiting him to the use of only one arm. (Doc. 9, pp. 4-5, 30-31, 35)

Plaintiff requests $350,000 in compensatory damages and $100,000 in punitive damages. (Doc. 9, p. 6)

Defendant Kelley filed her Motion to Dismiss on October 27, 2014. (Doc. 11) Defendant Kelley argued the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). (Docs. 11, 12) Plaintiff responded on December 1, 2014. (Doc. 17)

A Report and Recommendation was submitted on June 25, 2015. (Doc. 30) The Report and Recommendation was adopted by Order entered on September 16, 2015. (Doc. 46) All official capacity claims against Defendant Kelley were dismissed. The individual capacity claim that Defendant Kelley "fabricated a false statement in regards to Plaintiff's valid restrictions" on a grievance appeal remained as an individual capacity claim. (Doc. 30, p. 5)

The Medical Defendants filed their Motion for Summary Judgment on December 21, 2015. (Doc. 68) Defendant Kelley filed her Motion for Summary Judgment on December 22, 2015. (Doc. 71) A Summary Judgment hearing was held on January 9, 2016, to permit Plaintiff to respond orally to the Motions. Plaintiff appeared at the hearing via video conference.

Plaintiff testified he had no exhibits other than those already submitted. When asked if he

had any objection to any of Defendants' exhibits, Plaintiff objected, saying he "didn't agree with anything they said." The Court reframed the question, asking if there was any reason the exhibits should not be admitted. Plaintiff objected, stating they had no merit. Plaintiff's objection was overruled. Defendants had no additional exhibits. The Court accepted and considered all exhibits for both sides.

Plaintiff agreed with the Court's summary of the claims. Plaintiff testified his claims for this case started at ORU on May 18, 2012, and referred to "Ragland's notes."[1]

The Court asked Plaintiff to testify concerning Defendant Kelley. Plaintiff testified he named Defendant Kelley in Step One and Step Two of Grievance OR-13-01417. Plaintiff referred to OR-13-00561, and made reference to Administrative Regulation 225. Plaintiff testified both of these grievances were related to this case. Plaintiff was asked about OR-13-00561. When asked if there was an appeal, he testified there was an appeal. Plaintiff pointed to Defendant Kelley's response on the appeal, stating: "That was her response. I was speaking directly to the woman. That was what she said. She fabricated. She failed to note my allergies." Plaintiff had nothing further to add.

The Court then asked Plaintiff to testify concerning the Medical Defendants. Plaintiff testified Defendant Lane saw him once for intake. Plaintiff's testified she failed to give him a work limitation script. He also did not see that she had prescribed him albuterol, and he had no independent memory of that.

---

[1] A medical intake record was completed by LPN Roxanne Raglan at ORU on May 18, 2012. (Doc. 69-1, pp. 1-4) It does not appear that LPN Ragland made any recommendations. She simply took information from Plaintiff and had him do some basic physical tests, such as squatting and hand grip.

Plaintiff was asked about his May 21, 2012, work restrictions. Plaintiff testified there is a difference between documenting and prescribing. He testified a script is given for all correctional officers to acknowledge. According to Plaintiff, the officers "don't honor stuff in the medical jacket," "if you don't have that script it's all over," and "Murphy said she had never seen a script like that, so she was clearly being callous." Plaintiff testified that this argument applied to both Medical Defendants.

Plaintiff was asked to testify about Defendant Murphy. He testified Murphy did not follow Ragland's recommendation on May 18, 2012. Plaintiff testified he was entitled to that treatment.

Plaintiff was asked about his time at the ADC Cummins Unit, noting he did not grieve field work while he was at Cummins. He testified he did do field work there, adding that "he was complaining the whole time," "I grieved there, and they wouldn't give them to me for this case," and "I wasn't in field work the whole time." When asked how long he was in the field at Cummins, Plaintiff testified, "[y]ou do sixty days in the field," then "they moved me to the kitchen once I got Class 1."

The Court noted his May 21, 2012, work restriction was for his left hand, but his Complaint listed it as being for his right hand. Plaintiff testified the issue was his right hand. He stated the mention of the left hand on the work script is "their error."

Plaintiff did not recall the date of his asthma attack. He testified he has only suffered one asthma attack. He testified his sick call was documentation of his pain and suffering.

Plaintiff further testified that at Cummins, he got script work immediately. "So why didn't Murphy and Lane do the same? She just had to go through protocol."

Plaintiff was asked to detail what physical injury he suffered from the alleged disregard of

4

his allergies. He testified it was the asthma attack and some respiratory symptoms.

Plaintiff was asked to detail what physical injury he suffered as a result of not having a one-arm work script. Plaintiff testified "my hand swelled." He further testified he got written up for not using his right hand. He testified Dr. Kurt was the one who gave him proper relief.

Counsel for both sides were given the opportunity to question Plaintiff and to respond to Plaintiff's testimony. Both sides rested on their pleadings and exhibits.

Plaintiff was asked if he had anything further. He stated he had rebutted all of their arguments in Document 78 for Defendant Kelley and Document 8 for Defendants Murphy and Lane.[2] He did not know why they failed to furnish grievances from Cummins.

Counsel for the Medical Defendants noted the 2007 asthma attack in the Cummins Unit was not related to this case.

## II.  LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence

---

[2] It is not clear what Plaintiff is referring to with the reference of Document 8. This does not match any of his exhibits, which are labelled with letters or letters and numbers. CM/ECF Document 8 in this case is the executed summons on Defendants. CM/ECF Document 78 is Plaintiff's submitted Response to Defendant Kelley's Summary Judgment Motion. It cites various cases and administrative regulations, but does not appear to add any facts beyond what was elicited in the filed documents and the Summary Judgment Hearing.

of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the non-moving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

Defendant Kelley argues the case against her should be dismissed for four reasons: (1) Plaintiff failed to exhaust his administrative remedies; (2) Defendant Kelley is not a medical professional and, therefore, could not renew any work limitation script; (3) Defendant Kelley cannot be held liable under *respondeat superior* for merely reviewing a grievance; and, (4) Defendant Kelley is entitled to qualified immunity. (Doc. 73, pp. 1-2)

The Medical Defendants argue the evidence shows Plaintiff was provided adequate medical care, therefore there was no deliberate indifference. The Medical Defendant also note there is some dispute as to whether it was Plaintiff's left or right hand which required a medical restriction. (Doc. 70)

#### A.  Failure to Exhaust Administrative Remedies Against Defendant Kelley

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o

action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The only remaining claim against Defendant Kelley is Plaintiff's allegation that she fabricated information about his medical work restrictions in a grievance response by failing to note his allergies. (Doc. 30)  The response in question is for Grievance OR-13-00561, dated July 22, 2013. (Doc. 9, p. 12)  Defendant Kelley argues that Plaintiff filed and exhausted only one grievance, OR-13-01417, between July 22, 2013, and the date this action was filed on June 27, 2014.  In OR-13-01417, Plaintiff did not name Defendant Kelley as required by ADC grievance procedures, and Plaintiff did not list any allegations of a fabricated response or any other claim. (Doc. 73, p. 5)

At his Summary Judgment Hearing, Plaintiff testified that he named Defendant Kelley at both Step One and Step Two of OR-13-01417.

A review of OR-13-01417 reveals no allegation against Defendant Kelley.  This grievance concerns Plaintiff's attempted refusal to see a doctor for a re-evaluation of his right hand on

November 1, 2013. In it, Plaintiff states the doctor told him, "Wendy Kelley told him to do a re-evaluation." Plaintiff accused the physician of sexual harassment for asking him to take his shirt off to evaluate his hand. He accused Sergeant Delaney of violating his rights and retaliating against him when he asked to refuse medical treatment. Plaintiff makes no accusation against Defendant Kelley. Defendant Kelley's name is not even mentioned in Step Two. (Doc. 9-1, pp. 19-21)[3]

Plaintiff did not exhaust any administrative grievances against Defendant Kelley between July 22, 2013, and the date he filed this case on June 27, 2014. Plaintiff, therefore, failed to exhaust his administrative remedies against Defendant Kelley, and the remaining claim against Defendant Kelley should be dismissed with prejudice.

**B. No Deliberate Indifference to Plaintiff's Medical Needs by Medical Defendants**

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to a prisoner's serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those

---

[3] Based on the medical record, this exam was scheduled to re-evaluate Plaintiff's one-arm duty script. On September 17, 2013, Defendant Murphy had approved a permanent one-arm duty script due to decreased grip strength and impairment of Plaintiff's right hand. (Doc. 69-1, p. 25)

8

needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need, Plaintiff must show that he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*. (internal citation omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."

9

*Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

A review of the record is necessary to evaluate Plaintiff's claims. At his Summary Judgment hearing, Plaintiff testified that he saw Defendant Lane once for his intake into ORU. His claim against Defendant Lane was for failing to give him a work limitation script. He also noted he did not see that she had prescribed him albuterol, but he had no independent memory of that. At his deposition, Plaintiff testified his complaint against Defendant Lane was for failing to give him a work limitation script for his right hand. He also testified that she failed to note his exposure to some allergens could trigger his asthma. When asked if she provided him with a prescription for an albuterol inhaler, Plaintiff testified, "as far as I know, she didn't." (Doc. 69-2, pp. 17-22)

At his Summary Judgment hearing, Plaintiff testified his claim against Defendant Murphy was for failing to follow the recommendations written by LPN Ragland on May 18, 2012. Plaintiff

testified he was entitled to that treatment. At his deposition, Plaintiff testified his claim against Defendant Murphy was not for the 2012 intake. He saw her for the first time in 2013 when he was returned from the Cummins Unit to ORU. (Doc. 69-2, p. 26) Plaintiff testified Defendant Murphy failed to honor what LPN Ragland stated about asthma on his first intake into ORU in 2012. He testified this was the work script limiting his exposure to allergens, and a one-arm work script for his right hand. (Doc. 69-2. pp. 28-29)

At his Summary Judgment hearing, Plaintiff was asked to detail what physical injury he suffered as a result of allegedly not getting his scripts. He testified his right hand swelled. He also had an asthma attack and some respiratory symptoms from allergies. At his deposition, Plaintiff testified he had an asthma attack on July 19, 2013. Plaintiff testified he had not been out to work on July 19, 2013, as it had been raining. Plaintiff testified the attack was from his exposure to allergens the day before. (Doc. 69-2, pp. 48-49) Plaintiff did not testify about a swollen hand at his deposition.

The Medical Defendants submitted an affidavit from Dr. Robert Floss, former Regional Medical Director for Corizon, Inc., and current Associate Regional Medical Director for Correct Care Solutions, LLC. (Doc. 69-4) Dr. Floss reviewed and summarized Plaintiff's medical records relevant to this action. Dr. Floss noted numerous sick calls and treatments. He noted Plaintiff was received into ORU on May 18, 2012. Roxanne Raglan, LPN, conducted an initial health history on that day. She noted a history of asthma, allergies to pollen, dust and weeds, and history of a fractured hand, resulting in decreased strength in his left hand. He noted Defendant Lane, APN, saw Plaintiff on May 21, 2012. She noted environmental allergies and asthma and prescribed an albuterol inhaler. Defendant Lane also noted Plaintiff was to be provided with a medical limitation which restricted strenuous physical activity in excess of six hours; restricted prolonged crawling,

stooping, running, jumping, walking or standing; and, restricted work requiring left hand grip. (Doc. 69-4, p. 2) A review of the actual medical script confirms this summary. (Doc. 69-1, p. 8)

Dr. Floss noted Plaintiff was transferred to Cummins Unit on May 30, 2012. Plaintiff was returned to ORU on April 15, 2013. (Doc. 69-4, p. 2) Dr. Floss noted Defendant Murphy gave a verbal order to renew Plaintiff's prescriptions for an antihistamine for his allergies and his albuterol inhaler on April 25, 2013. She attempted to examine Plaintiff on April 29, 2013. (Doc. 69-4, p. 3)

Defendant Murphy noted she was not able to safely complete an examination of Plaintiff on April 29, 2013. Plaintiff came into the exam room and demanded a "four hour script" and to "be kept away from pollen." Plaintiff crossed the tape line, refused to retreat, and slammed his right fist into his left hand. Defendant Murphy had him removed and reviewed his chart from Cummins instead. In reviewing his Cummins charts, she noted he had arrived at ORU from Cummins, where he had been off all of his asthma medications for four months. He was often a "no show" to take his medications in Cummins, and they had cancelled his prescriptions as a result. She noted he placed more emphasis on scripts than on filling or taking his prescriptions. Based on the fact he had been off all of his asthma medications for four months before arriving in ORU, her medical opinion was that his asthma was either mild or nonexistent. (Doc. 69-1, p. 15) Dr. Floss agreed with Defendant Murphy's medical opinion. (Doc. 69-4, p. 3)

After Plaintiff presented at sick call on May 8, 2013, Defendant Murphy examined Plaintiff on May 13, 2013. Plaintiff again requested a script saying he was allergic to pollen and weeds. Defendant Murphy noted no wheezing and that Plaintiff was in no apparent distress. She provided a work restriction to avoid prolonged crawling and strenuous physical activity. (Doc. 69-4, p. 3)

Plaintiff was already prescribed an antihistamine for allergies. (Doc. 69-1, p. 16) Plaintiff then presented at sick call several times requesting a "four hour" and "no pollen" script. Plaintiff was examined again by Defendant Murphy on June 18, 2013, and he once more asked for a "no pollen" script. Plaintiff complained of "coughing up black gel." Defendant Murphy examined him, and noted he did not cough, there was no black gel, and no respiratory distress. She stated there was no evidence of an acute reaction to pollen and weeds, and the patient's exam was normal. She advised him to come in immediately if he had an allergic reaction. She saw no reason for a medical script for no pollen. She also stated she saw no reason to see Plaintiff again solely for the issue of wanting a script. (Doc. 69-1, p. 20)

On July 18, 2013, Plaintiff was seen by the sick call nurse for complaints of allergy symptoms, chest pain, and shortness of breath. The sick call nurse noted he was in no apparent distress, respirations were even and unlabored, lungs were clear, and there was no wheezing. The nurse noted: "I/M has not stopped talking since he got in here about WHY he shouldn't be on hoe squad. He hasn't coughed one time." (Doc. 69-1, p. 21)

On July 19, 2013, Plaintiff presented to sick call with an alleged asthma attack. He complained of a stuffy head, throat drainage, coughing, chest tightness, and wheezing. He was diagnosed with hay fever/allergies. He was prescribed an antihistamine and acetaminophen, and given a one-day restriction for no sports, no duty, and no yard call. (Docs. 69-1, p. 22; 69-4, p. 5)

Plaintiff was seen in sick call on August 1, 2013, for a swollen and red right hand, asking for a follow-up on his one-arm restriction. The nurse noted his script was for his left hand, and that Plaintiff had never before claimed the prescription was for the wrong hand. She did note some discoloration and edema on the right hand and prescribed acetaminophen. (Doc. 69-1, p. 23)

Plaintiff saw Defendant Murphy with a complaint of a swollen right hand on September

13

17, 2013. She approved a permanent one-arm duty script due to decreased grip strength in his right hand. (Doc. 69-1, p. 25)

On November 1, 2013, Plaintiff was examined by Jeffrey Jones, P.A. for revaluation of his one-arm script. Jones noted no impairment and cancelled the script. Plaintiff was confrontational and agitated. (Doc. 69-4, p. 6) Jones noted: "IM will have one arm duty restriction cancelled and displayed no medical reason to have such restriction readministered. IM refused to cooperate with full examination and evaluation, but during agitated and confrontational state, displayed no impairment or lack of function of right upper extremity." (Doc. 69-1, p. 27) This examination was the subject of Plaintiff's Grievance OR-13-01417 discussed above.

The medical records note numerous sick calls, examinations, and treatment after this point. On July 21, 2014, Plaintiff developed a raised area in the palm of his hand. (Doc. 69-1, p. 31) On July 25, 2014, Defendant Murphy diagnosed Plaintiff with a ganglion cyst in the right hand, prescribed pain medication, and gave Plaintiff a one-arm work limitation. (Doc. 69-1, p. 32) Dr. Floss noted these cysts are non-cancerous and, in many cases, go away on their own without treatment. (Doc. 69-4, p. 7) Plaintiff was examined by Dr. Holtik on August 18, 2014, and he renewed Plaintiff's one-arm work limitation. (Doc. 69-1, p. 34) On September 12, 2014, Dr. Holtik noted Plaintiff "wanted every script for lack of effort renewed." Dr. Holtik renewed the limitations for avoiding prolonged crawling, heavy lifting, and strenuous physical activity. He did not renew the one-arm limitation or assign any limitation regarding allergies. (Doc. 69-1, p. 36)

Dr. Floss' medical opinion is that Plaintiff's asthma is a "mild intermittent" type. It does not prevent him from performing field work with exposure to dust, pollen, grass, and other allergens. His asthma also did not warrant a "no pollen" prescription. (Doc. 69-4, p. 9) It is also

his medical opinion that Plaintiff received appropriate and satisfactory treatment for his medical complaints. (Doc. 69-4, p. 10)

Thus, Plaintiff's claim against Defendant Lane is for failing to provide him with a work limitation script assessing no work with his right hand during his first intake into ORU on May 18, 2012. Plaintiff's claim against Defendant Murphy is for not giving him a permanent work limitation script restricting his exposure to allergens to four hours and requiring no work with his right hand when he returned to ORU in April 2013. As a result of Defendant Lane and Defendant Murphy refusing to provide these work limitation scripts, Plaintiff alleges he suffered physical injury in the form of an asthma attack, a swollen right hand, and respiratory allergy symptoms.

Plaintiff failed to provide any objectively verifiable evidence of an asthma attack. At his Summary Judgment hearing, Plaintiff did not recall the date of his asthma attack, but he did testify that he only had one attack. He further testified his sick call was the documentation for his pain and suffering. In his Complaint, Plaintiff alleged Defendants were responsible for him suffering an actual injury on July 19, 2013. (Doc. 9, p. 4) When asked about this at his deposition, Plaintiff testified this was his asthma attack. (Doc. 69-2, p. 47) The sick call notes for July 19, 2013, indicate Plaintiff presented with complaints of his "head being stuffy, drainage to back of throat, coughing[,]" and "[s]tates chest feels tight, and feels as if chest is wheezing." Plaintiff's respirations were documented as 16, which is in the normal range. (Doc. 69, p. 7, ¶ 34) Plaintiff was diagnosed with "Hay Fever/Allergies." He was prescribed no additional medications for asthma, only an antihistamine and acetaminophen. (Docs. 69-1, p. 22; 69-4, p. 5) Plaintiff has, therefore, failed to produce any objectively verifiable evidence that he suffered an asthma attack on July 19, 2013.

Further, even if one accepts that Plaintiff actually did suffer an asthma attack on July 19,

2013, it was not due to his lack of work script limiting his exposure to allergens. In his deposition, Plaintiff testified he was not outside in the field on July 19, 2013, because it was raining. Therefore, any asthma attack suffered on that day was not the result of his exposure to allergens in the field.

Plaintiff's allegations of a swollen hand and respiratory allergy symptoms are, at most, *de minimis* injuries. Claims under the Eighth Amendment require a compensable injury to be greater than *de minimis*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Whether an injury is sufficiently serious is "claim dependent." *Id.* at 447. "No clear line divides *de minimis* injuries from others." *Id.* The most widely used definition of a *de minimis* injury is that enunciated in *Luong. v. Hatt*, 979 F. Supp. 481, 486 (N.D. Texas Sept. 11, 1997). The Court in *Luong* stated a physical injury was:

> an observable or diagnosable medical condition requiring treatment by a medical professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc. which lasts even up to two or three weeks.. . . Injuries treatable at home [by a free world citizen] and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e). . .

*Id.* Plaintiff's treatment for his hand, including the later-diagnosed ganglion cyst, required only over-the-counter pain medication and rest. His treatment for his allergies consisted of over-the-counter antihistamines. His swollen hand and allergy symptoms were, therefore, non-actionable *de minimis* injuries.

Further, Plaintiff was seen regularly for his allergies, asthma, and hand, and he was routinely prescribed antihistamines for his allergies, pain medication for his hand, and an albuterol inhaler for his asthma. Plaintiff's mere disagreement with the adequacy of the treatment is not actionable.

Finally, Plaintiff cannot claim deliberate indifference to his medical condition based on his work assignment. Deliberate indifference in the work assignment context requires that prison officials knew of an inmate's serious medical need and compelled him "to perform physical labor that [is] beyond his strength, dangerous to his health, or unduly painful." *Mays v. Rhodes*, 255 F.3d 644, 649 (8th Cir. 2001). There is no evidence in the record that Plaintiff was ever compelled to perform work in violation of his medical records and work scripts. Indeed, the crux of Plaintiff's claims against Defendants Murphy and Lane is that they refused to provide work scripts so that he could avoid field work. The record is clear, however, that Plaintiff received work limitation scripts when his medical conditions warranted it. In the absence of valid medical reasons for those work limitation scripts, Plaintiff has no constitutional right to avoid field work.

## IV. CONCLUSION

For the foregoing reasons, I recommend Defendants' Motions for Summary Judgment (Docs. 68, 71) be **GRANTED**, and that Plaintiff's Complaint be dismissed against all remaining parties with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of July, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE